**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED

MAR 12 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| GLENN E NELSON | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, a municipal corporation; | ) | 1:25-cv-02588 |
| CLERK of the City of Chicago, Anna M. Valencia; | ) | Judge Georgia N Alexakis |
| MAYOR of the City of Chicago, Brandon Johnson; | ) | Magistrate Judge Keri L. Holleb Hotaling |
| City of Chicago DEPARTMENT OF FINANCE | ) | Random/Cat. 2 |
| **DEFENDANT(s).** | ) | |

**MOTION FOR INJUNCTIVE AND DECLARATORY RELIEF**

**NOW COMES** the Plaintiff, GLENN E. NELSON (hereinafter referred to as "Plaintiff" or "Mr. Nelson"), pro-se, and for his **MOTION for Injunctive or Declaratory Relief** per

- The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,
- The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (a)(4)(B-C),
- The Freedom of Information Act ("FOIA"), 5 ILCS 140/11,

against the Defendants, City of Chicago (hereinafter "City of Chicago"), Clerk of the City of Chicago, Mayor of the City of Chicago, and City of Chicago Department of Finance, collectively referred to as the "Defendants", and states the following:

## JURISDICTION AND VENUE

1.) This court has jurisdiction over this matter as it relates to a federal question related to the City of Chicago's denial to provide Automated Speed Enforcement Program and Red-Light Enforcement Program OPERATION MANUALS per a Freedom of Information Act ("FOIA") request.

2.) Jurisdiction is proper in this Court as the action involves a federal question that the Court has the inherent power to hear and determine, and this Court employs original jurisdiction of all justiciable matters, including for The Freedom of Information Act (5 U.S.C. § 552).

3.) Venue for this action properly lies in this division pursuant to 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

4.) On **February 14, 2025**, Plaintiff submitted the following email FOIA request to the City of Chicago Department of Finance. **(See EXHIBIT A)**

"From: Glenn Nelson
To: DOFFOIA <doffoia@cityofchicago.org>
Sent: Friday, February 14, 2025 at 02:33:20 PM CST
Subject: FOIA REQUEST - Dept. of Finance (Operations Manuals for the Red-Light Camera Program and for the Automated Speed Enforcement Program)

Department of Finance FOIA Team,
I am requesting the following information pursuant to the Illinois FOIA.
I have been advised my other City of Chicago departments and the City's legal team that the Department of Finance is the department that would be able to provide the below requested FOIA requested documentation.

This request is not for any commercial purpose.

1.) A copy of the operation manuals for the City of Chicago's AUTOMATED RED-LIGHT CAMERA ENFORCEMENT PROGRAM equipment (including radar) and for the City of Chicago's AUTOMATED SPEED CAMERA ENFORCEMENT PROGRAM equipment (including radar).

2.) In addition to #2 above, a copy of the functional specs associated with the City of Chicago's AUTOMATED RED-LIGHT CAMERA ENFORCEMENT PROGRAM equipment (including radar) and for the City of Chicago's AUTOMATED SPEED CAMERA ENFORCEMENT PROGRAM equipment (including radar). NOTE: This may be included in the operations manuals.

If there is any cost associated with this FOIA request, I would request a fee waiver under the Freedom of Information Act.

A waiver or reduction in fees would be in the public interest since this information is being requested, not for a personal reason, rather for a purpose that could potentially benefit all citizens of the City of Chicago (and visitors to Chicago). This information is needed to validate and corroborate existing data as to whether many automated traffic citations that are being given should actually not have been given.

Please send all responses by email. If you have any clarifying questions, please reach out to me.
Sincerely, Glenn Nelson"

5.) The Illinois Freedom of Information Act (5 ILCS 140) states in part as follows:

> "(5 ILCS 140/1.2)
> Sec. 1.2. Presumption. **All records in the custody or possession of a public body are presumed to be open to inspection or copying.** Any public body that asserts that a record is exempt from disclosure has the burden of proving by clear and convincing evidence that it is exempt.
> (Source: P.A. 96-542, eff. 1-1-10.)"

6.) The Federal Freedom of Information Act 5 U.S.C. § 552(a)(2)(C) states in part as follows:

> "(5 U.S.C. § 552(a)(2)(C))
> Each agency, in accordance with published rules, shall make available for public inspection in an electronic format
> (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;
> (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;
> (C) administrative staff manuals and instructions to staff that affect a member of the public;
> (D) copies of all records, regardless of form or format, which have been released to any person under paragraph (3) and which, because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; and copies of all records, regardless of form or format –
> (i) that have been released to any person under paragraph (3); and
> (ii)(I) that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or
> (II) that have been requested 3 or more times."

7.) On **February 27, 2025**, the City of Chicago Department of Finance sent the below response to Plaintiff's denying Plaintiff's above FOIA request **(Complete 2 page response attached as EXHIBIT A)**:

> **Department of Finance response:**
> "DOF has reviewed your request and has determined that the records requested are exempt from disclosure under FOIA for the following reasons:
>
> Please be advised that DOF has withheld information pursuant to 5 ILCS 140/7(1)(g) of FOIA, which exempts from disclosure, "[t]rade secrets and commercial or financial information obtained from a person or business where the trade secrets or commercial or financial information are furnished under a claim that they are

proprietary, privileged or confidential, and that disclosure of the trade secrets or commercial or financial information would cause competitive harm to the person or business, and only insofar as the claim directly applies to the records requested." The operations manuals if released would cause economic harm to the vendors.

Please be advised that DOF is additionally withholding records corresponding to your request in compliance with 5 ILCS 140/7(1)(o) of FOIA, which exempts from disclosure, "[a]dministrative or technical information associated with automated data processing operations, including but not limited to software, operating protocols, computer program abstracts, file layouts, source listings, object modules, load modules, user guides, documentation pertaining to all logical and physical design of computerized systems, employee manuals, and any other information that, if disclosed, would jeopardize the security of the system or its data or the security of material exempt under this Section 7(1)(o).

You have the right to have a denial reviewed by the Public Access Counselor (PAC) at the Office of the Illinois Attorney General, 500 S. 2nd Street, Springfield, Illinois 62701, (877) 299-3642. **You may also seek judicial review of a denial under 5 ILCS 140/11 of FOIA."**

8.) Upon information and belief, the City of Chicago Department of Finance's above claim of FOIA exemption per 5 ILCS 140/7(1)(g) does not apply to Plaintiff's FOIA request since the <u>Operations Manual processes and procedures being used to identify how the City of Chicago tickets it's citizens for traffic violations are not trade secrets, proprietary, privileged, or confidential</u>.

9.) The Department of Finance left off the subsequent paragraphs of paragraph "g" (shown below) which state the circumstances under which their alleged exemption would apply, and those circumstances are not relevant to Plaintiff's FOIA request.

"5 ILCS 140/7(1)(g)

**Sec. 7. Exemptions.**

(1) When a request is made to inspect or copy a public record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure, the public body may elect to redact the information that is exempt. The public body shall make the remaining information available for inspection and copying. Subject to this requirement, the following shall be exempt from inspection and copying:

(g) Trade secrets and commercial or financial information obtained from a person or business where the trade secrets or commercial or financial information are furnished under a claim that they are proprietary, privileged, or confidential, and that disclosure of the trade secrets or commercial or financial information would cause

competitive harm to the person or business, and only insofar as the claim directly applies to the records requested.

The information included under this exemption includes all trade secrets and commercial or financial information obtained by a public body, including a public pension fund, from a private equity fund or a privately held company within the investment portfolio of a private equity fund as a result of either investing or evaluating a potential investment of public funds in a private equity fund. The exemption contained in this item does not apply to the aggregate financial performance information of a private equity fund, nor to the identity of the fund's managers or general partners. The exemption contained in this item does not apply to the identity of a privately held company within the investment portfolio of a private equity fund, unless the disclosure of the identity of a privately held company may cause competitive harm.

Nothing contained in this paragraph (g) shall be construed to prevent a person or business from consenting to disclosure.

(o) Administrative or technical information associated with automated data processing operations, including, but not limited to, software, operating protocols, computer program abstracts, file layouts, source listings, object modules, load modules, user guides, documentation pertaining to all logical and physical design of computerized systems, employee manuals, and any other information that, if disclosed, would jeopardize the security of the system or its data or the security of materials exempt under this Section."

10.) On **March 4, 2025**, the Illinois Office of the Assistant Attorney General – Public Access Bureau sent the following determination letter, subsequent to a similar, escalated FOIA request seeking the aforementioned Operations Manuals from the Chicago Department of Procurement Services (CDOP). **(Complete 4 page response attached as EXHIBIT B)**.

**DETERMINATION**

"*All public records in the possession or custody of a public body are "presumed to be open to inspection or copying."* 5 ILCS 140/1.2 (West 2022); see also Southern Illinoisan v. Illinois Department of Public Health, 218 Ill. 2d 390, 415 (2006). *A public body "has the burden of proving by clear and convincing evidence" that a record is exempt from disclosure.* 5 ILCS 140/1.2 (West 2022).

FOIA is intended to ensure public access to *"full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees[.]"* 5 ILCS 140/1 (West 2022). However, "[a] requester is entitled only to records that an agency has in fact chosen to create and retain." Yeager v. Drug Enforcement Administration, 678 F. 2d 315, 321 (D.C. Cir. 1982). FOIA generally requires a public body to conduct a reasonable search for responsive records under the circumstances of each request. Better Government Ass'n v. City of Chicago, 2020 IL App (1st) 190038, ¶ 31. Further, a FOIA request must generally be directed to the

government entity responsible for maintaining the types of records requested. See Duncan Publishing, Inc., 304 Ill. App. 3d at 785 *("[T]he individual departments, which are City funded and City controlled, are 'public bodies' and are each individually subject to the mandates of the FOIA.")*.

Additionally, in a telephone conversation yesterday, Ms. Rodriguez **(Department of Procurement Services)** advised the AAG that she was aware that the City's **Department of Finance (DOF)** received a request from Mr. Nelson for the same operations manuals he requested from DPS and that **DOF advised it was in possession of the operations manuals.** This morning, Ms. Rodriguez forwarded DOF's response to Mr. Nelson's request for the operations manuals to the AAG. DOF denied the request pursuant to sections 7(1)(g) and 7(1)(o) of FOIA. **DOF's confirmation that it is the public body that possesses the manuals** further supports the conclusion that DPS's response to Mr. Nelson's request did not violate FOIA."

11.) The **February 27, 2025** response above from the Chicago Department of Finance and the **March 4, 2025** response above from the Assistant Attorney General's office both confirm that the Chicago Department of Finance is in possession of the operations manuals requested in Plaintiff's FOIA request.

12.) Upon information and belief, the City of Chicago Automated Speed Enforcement Program Operations Manual contents is critical to succinctly determining the outcome of a separate traffic case presently before the Illinois Circuit Court.

13.) Such separate traffic case outcome hinges solely on determining how the City of Chicago's Automated Speed Enforcement Program processes and procedures determine whether someone deemed to be driving the below speeds would or would not receive a warning ($0 fine) or violation (monetary fine).

**SCHOOL ZONES:**
Driving 26 mph in 20 mph school zone between 7:00am and 4:00pm ($35 fine)
Driving 31 mph in 20 mph school zone between 7:00am and 4:00pm ($100 fine)
Driving 36 mph in 30 mph school zone between 4:00pm and 7:00pm ($35 fine)
Driving 41 mph in 30 mph school zone between 4:00pm and 7:00pm ($100 fine)
**PARK ZONES:**
Driving 26 mph in 20 mph school zone between 6:00am and 11:00pm ($35 fine)
Driving 31 mph in 20 mph school zone between 6:00am and 11:00pm ($100 fine)
Driving 36 mph in 30 mph school zone between 6:00am and 11:00pm ($35 fine)
Driving 41 mph in 30 mph school zone between 6:00am and 11:00pm ($100 fine)

14.) **Even a redacted version** of the operations manual (though redaction shouldn't be necessary), clarifying the specific processes and procedures used to determine whether someone is deemed to be driving the above referenced speeds, does not require divulging any trade

secrets, proprietary, privileged, or confidential information, and would not cause competitive or economic harm to the current program vendor, Verra Mobility.

15.) On **February 14, 2025**, City of Chicago Corporation Counsel attorney Stephen Choi sent the below 2/14/2025 email requesting a copy of the Automated Speed Enforcement Program operations manual from the program vendor, Verra Mobility.

> **"From: Stephen Choi**
> To: info@verramobility.com <info@verramobility.com>
> Cc: Glenn Nelson; Marianna Kiselev; Colin Finnegan (Chief Judge's Office)
> Sent: Friday, February 14, 2025 at 11:58:16 AM CST
> Subject: Speed Camera Operations Manual / 24M1625143
>
> Dear Sir or Madam
> According to the City of Chicago Department of Transportation Document, 2023_AE_Report_FINAL.pdf (page 3 and 4 of the pdf) your company is the supplier of Automated Speed Enforcement cameras for the City of Chicago.
> There is an ongoing litigation regarding a ticket issued for violating the speed limit as detected by one of the cameras installed at 7508 W Touhy Ave, on 2/28/2024.
> I would be grateful if you could supply a copy of the Speed Camera Operations Manual for the camera located at 7508 W Touhy Ave, as this will help resolve this matter.
> Thank you in advance for your help.
> Stephen Choi
> Assistant Corporation Counsel,
> Legal Information & Prosecutions Division
> City of Chicago Department of Law

16.) On **February 14, 2025**, Stephen Choi's supervisor, Marianna Kiselev sent the below follow-up email 22 minutes later cancelling the request for Verra Mobility to provide the operations manual.

> **"From: Marianna Kiselev**
> To: Stephen Choi; info@verramobility.com
> Cc: Glenn Nelson
> Sent: Friday, February 14, 2025 at 12:19:53 PM CST
> Subject: Re: Speed Camera Operations Manual / 24M1625143
>
> To whom it may concern,
> You can disregard the email below.
> Thanks,
> Marianna Kiselev
> Supervising Assistant Corporation Counsel
> Legal Information and Prosecutions
> City of Chicago Department of Law"

17.) Based on all of the above information, it is apparent that the requested operations manuals do exist, as they should, for such expansive City of Chicago programs like the Automated Speed Enforcement Program and the Automated Red-Light Program.

## ADDITIONAL FACTS REGARDING THE EXISTENCE OF THE REQUESTED OPERATIONS MANUALS

18.) In **June 2013**, the City of Chicago's $67,000,000 Automated Speed Enforcement Program contract # 28009 was signed by the President and CEO of the selected vendor, American Traffic Solutions, Inc. (Vendor # 56170024) with an effective date of June 28, 2013.

19.) Contract # 28009 is posted on the City of Chicago Department of Procurement website. DPS most recently modified and extended this contract on October 28, 2024, and the extension was posted online on November 13, 2024.

20.) The City of Chicago's 2013 Automated Speed Enforcement Program contract # 28009 **ARTICLE 4 – SYSTEMS - SECTION 4.4** supports Plaintiff's belief that the City of Chicago has the City of Chicago's Automated Speed Enforcement Program Operations Manual readily in its possession.

> **"4.4 Scope of Licenses**
> The City may make 3 copies per System of the Software **and multiple copies of any user manuals for backup and archival purposes.** The City will not reverse engineer, decompile, or otherwise attempt to derive the source code for the Software. Under any licensing or sublicensing agreement of third-party software, including operating system software and utilities, which Vendor must secure, the City has the right to make 3 copies per System of the licensed programs for backup and archival purposes."

21.) The City of Chicago's 2013 Automated Speed Enforcement Program contract # 28009 **ARTICLE 4 – SYSTEMS - SECTION 4.13** supports Plaintiff's belief that the City of Chicago has the City of Chicago's Automated Speed Enforcement Program Operations Manual readily in its possession.

> **"4.13 Vendor Program Documentation**
> **Vendor must supply all necessary instruction and documentation to enable the City to utilize the Vendor Program."**

22.) The City of Chicago's 2013 Automated Speed Enforcement Program contract # 28009 **ARTICLE 4 – SYSTEMS - SECTION 4.15** supports Plaintiff's belief that the City of Chicago has the City of Chicago's Automated Speed Enforcement Program Operations Manual readily in its possession.

**"4.15 System Training**
Vendor must supply all necessary instruction to enable the City and its consultants to utilize the Systems, **in accordance with the requirements set forth in Exhibit 4-A."**

**"EXHIBIT 4-A: TRAINING**

**1.) Vendor will:**

a. Provide in-person training and multiple training times for the City of Chicago staff or agents to properly verify data capture images. **This training will include a written e-learning module describing how to verify data capture images.**
b. Provide access to Vendor software to City of Chicago staff and contractors.
c. Provide 40 hours of training to Department of Finance technicians who are making the determination of a potential violation per State Statute.
d. Provide training to access and view the approved violations and supporting documentation to Department of Administrative Hearings staff and Administrative Law Judges.

**2.) Compliance with Law**

a. City of Chicago Technicians who determine that a violation has occurred shall be trained in accordance with state law and City ordinances.
b. Technicians who calibrate and test the speed enforcement systems shall be trained in accordance with state law and City ordinances."

23.) The City of Chicago's 2013 Automated Speed Enforcement Program contract # 28009 **ARTICLE 4 – SYSTEMS - SECTION 4.16(c)** supports Plaintiff's belief that the City of Chicago has the City of Chicago's Automated Speed Enforcement Program Operations Manual readily in its possession.

**"4.16 Rights to Data and Retention of Data**
**(c) Intellectual Property.** Vendor hereby grants to the City an irrevocable, transferable, perpetual, royalty-free, paid-up license **to use, reproduce, distribute, display, and make derivative works of the Deliverables that are not property of the City and to allow its contractors and subcontractors of any tier to use, reproduce, distribute, display, and make derivative works of the Deliverables.** Notwithstanding the foregoing, the City will not make derivative works of the Software. Vendor will, and will cause all of its Subcontractors, employees, officers, directors, agents, affiliates and other persons within its control to execute all documents and perform all acts that the City may reasonably request in order to evidence the license described in this Section 4.16. The City will not transfer to third parties derivative works of Vendor's Software."

24.) The City of Chicago's 2013 Automated Speed Enforcement Program contract # 28009 **ARTICLE 11 – SPECIAL CONDITIONS - SECTION 11.2** supports Plaintiff's belief that the City of Chicago has the City of Chicago's Automated Speed Enforcement Program Operations Manual readily in its possession, or the City could have received it with an email request to the vendor, Verra Mobility.

**"11.2 Confidential Information**
Vendor acknowledges that it and its employees, agents or representatives may, in the course of performance of this Agreement, be exposed to or acquire information which is proprietary to or confidential to the City or its affiliated companies or their clients. Any and all information of any form obtained by Vendor or its employees, agents and representatives in the performance of this Agreement will be considered to be confidential and proprietary information. Vendor must hold such information in strict confidence and not disclose such information to third parties or use such information for any purposes whatsoever other than the provision of work or services to the City under this Agreement and to advise each of its employees, agents and representatives of their obligations to keep such information confidential. It is understood that in the event of a breach of this provision, damages may not be an adequate remedy and the City is entitled to injunctive relief to restrain any such breach, threatened or actual.

**If Vendor is presented with a request for documents by any administrative agency or with a subpoena duces tecum regarding any records, data or documents which may be in Vendor's possession by reason of this Agreement,** Vendor must immediately give notice to the Commissioner and the Corporation Counsel for the City with the understanding that the City will have the opportunity to contest such process by any means available to it before the records or documents are submitted to a court or other third party. Vendor, however, is not obligated to withhold the delivery beyond the time ordered by the court or administrative agency, unless the subpoena or request is quashed or the time to produce is otherwise extended."

25.) The City of Chicago's 2013 Automated Speed Enforcement Program contract # 28009 **EXHIBIT 1 – STATEMENT OF WORK (Sections highlighted below)** supports Plaintiff's belief that the City of Chicago has the City of Chicago's Automated Speed Enforcement Program Operations Manual readily in its possession.

**"EXHIBIT 1 – STATEMENT OF WORK:** Vendor will comply with the following Automated Speed Enforcement installations requirements, operating requirements, training requirements, and performance standards:

**6. Support Services**

(a) Ticket Review and Verification

**1. Business Process (A-I, including G)**

**G.** As soon as practicable after the Effective Date, Vendor and the City will agree to a Business Requirements Document ('BRQ") setting forth certain protocols and procedures with regard to services to be provided by Vendor under this Agreement. To the extent of any conflict between this Agreement or applicable laws and the BRQ, this Agreement will control, and nothing in the BRQ will be deemed to modify or limit any of Vendor's obligations under this Agreement at any time, including the obligation to comply with

applicable laws at all times. Vendor and City may revise the BRQ, upon written agreement of the Vendor and the City, as operational needs dictate, but to the extent that the parties wish to implement a change to the BRQ that would impact the scope of services, warranty, schedule for delivery, service levels, cost, or any of Vendor's other obligations set forth in this Agreement, such changes are void and of no effect on the City (notwithstanding any other approval contemplated or provided for in this Agreement), unless made by way of an amendment pursuant to Section 13.4 of the Agreement.

(b) Training

1. Vendor will provide in-person training and multiple training times for the City of Chicago staff or agents to properly verify and/or review violation images and data. **This training should include a written manual or e-learning module describing how to verify data capture images.** Training and access of Vendor Software to City of Chicago staff and contractors.

(d) **Expert testimony Services:** During the term of the Agreement, including any extension options, upon Vendor's receipt of a written request from the City, **Vendor shall provide the City with or train an expert witness to testify in court on matters relating to the accuracy, technical operations, including maintenance calibration, and effectiveness of the System and the services provided by Vendor under this Agreement. The expert witness will be available to explain the operational and technical aspects of their System.** If the Vendor expert witness requested is the project manager or any other staff based within the Chicagoland area, Vendor will make such expert witness available upon the City's reasonable request. If any Vendor expert witness requested is based outside of the Chicagoland area or is retained specifically to opine upon a matter relating to the Systems (a "Special Expert"), Vendor will make such Special Expert available within fourteen (14) calendar days of the City's request. If any Special Expert is required more than two (2) times during any twelve (12) month period, Customer shall reimburse Vendor for any reasonable time and travel costs incurred for the additional dates. Reimbursement for travel costs is subject to the City's Travel Reimbursement policy, attached as Exhibit 15."

26.) Based on all of the above information, it is apparent that the requested operations manuals do exist, as they should, for such expansive City of Chicago programs like the Automated Speed Enforcement Program and the Automated Red-Light Program.

**WHEREFORE,** the Plaintiff (pro-se), Glenn Nelson, prays that this Honorable Court grants his Motion for Injunctive or Declaratory Relief as follows:

A.) Order the Defendant (City of Chicago, including Department of Finance) to provide Plaintiff with a copy of or access to the Operations Manual for the City of Chicago's Automated Speed Enforcement Program and the Automated Red-Light Enforcement Program.

B.) Order the Defendant (City of Chicago, including Department of Transportation) to provide Plaintiff with a copy of the Business Requirements ("BRQ") for the City of Chicago's Automated Speed Enforcement Program and the Automated Red-Light Enforcement Program. They are known as a "BRQ" document in City contracts like #28009 (Automated Speed Enforcement Program contract).

C.) Order the Defendant (City of Chicago) to require and make available expert testimony in court to be provided by Automated Speed Camera Program vendor (Verra Mobility), to be subject to cross-examination under oath, as required by Verra Mobility's Automated Speed Enforcement Program contract with the City of Chicago.

and grant any other relief that is necessary and proper.

Respectfully submitted,

Glenn Nelson

Plaintiff (pro-se)

**ATTACHED:** Department of Finance 2/27/2025 FOIA Response (2 pages)
**ATTACHED:** IL Asst. Attorney General 3/4/2025 Escalated CDOP Determination Letter (4 pages)

Glenn Nelson
3S066 Mulberry Lane
Glen Ellyn, IL 60137
Cellphone: (847)915-9663
Email: glenn.nelson333@yahoo.com

Filed online, mailed, emailed, or hand delivered to:

City of Chicago Mayor's Office
121 N. LaSalle Street
Chicago City Hall 4th Floor
Chicago, IL 60602
Phone: 312.744.5000

City of Chicago Department of Finance
121 N. LaSalle Street
Chicago City Hall 7th Floor
Chicago, IL 60602
Phone: 312.744.2204

City of Chicago Clerk's Office
121 N. LaSalle Street
Chicago City Hall, Room 107
Chicago, IL 60602
Phone: 312.742.5375

City of Chicago Law Department
2 N. LaSalle Street, Suite 700
Chicago, IL 60602
Attn: Corporation Counsel
Phone: 312.744.0220

Exhibit A (page 1 of 2)

CITY OF CHICAGO

DEPARTMENT OF FINANCE

February 27, 2025

Glenn Nelson
847-915-9663
glenn.nelson333@yahoo.com

Mr. Nelson,

On behalf of the City of Chicago Department of Finance ("DOF"), I am responding to your Freedom of Information Act ("FOIA") sent and received on February 14, 2025, seeking:

> *"1.) A copy of the operation manuals for the City of Chicago's AUTOMATED RED-LIGHT CAMERA ENFORCEMENT PROGRAM equipment (including radar) and for the City of Chicago's AUTOMATED SPEED CAMERA ENFORCEMENT PROGRAM equipment (including radar). 2.) In addition to #2 above, a copy of the functional specs associated with the City of Chicago's AUTOMATED RED-LIGHT CAMERA ENFORCEMENT PROGRAM equipment (including radar) and for the City of Chicago's AUTOMATED SPEED CAMERA ENFORCEMENT PROGRAM equipment (including radar). NOTE: This may be included in the operations manuals."*

DOF has reviewed your request and has determined that the records requested are exempt from disclosure under FOIA for the following reasons:

Please be advised that DOF has withheld information pursuant to 5 ILCS 140/7(1)(g) of FOIA, which exempts from disclosure, "[t]rade secrets and commercial or financial information obtained from a person or business where the trade secrets or commercial or financial information are furnished under a claim that they are proprietary, privileged or confidential, and that disclosure of the trade secrets or commercial or financial information would cause competitive harm to the person or business, and only insofar as the claim directly applies to the records requested." The operations manuals if released would cause economic harm to the vendors.

Please be advised that DOF is additionally withholding records corresponding to your request in compliance with 5 ILCS 140/7(1)(o) of FOIA, which exempts from disclosure, "[a]dministrative or technical information associated with automated data processing operations, including but not limited to software, operating protocols, computer program abstracts, file layouts, source listings, object modules, load modules, user guides, documentation pertaining to all logical and physical design of computerized systems, employee manuals, and any other information that, if disclosed, would jeopardize the security of the system or its data or the security of material exempt under this Section 7(1)(o).

Exhibit A (pg 2 of 2)

CITY OF CHICAGO

DEPARTMENT OF FINANCE

You have the right to have a denial reviewed by the Public Access Counselor (PAC) at the Office of the Illinois Attorney General, 500 S. 2nd Street, Springfield, Illinois 62701, (877) 299-3642. You may also seek judicial review of a denial under 5 ILCS 140/11 of FOIA.

Sincerely,

Frank Davis
FOIA Officer
Department of Finance
doffoia@cityofchicago.org

Exhibit B (pg 1 of 4)

OFFICE OF THE ATTORNEY GENERAL
STATE OF ILLINOIS

KWAME RAOUL
ATTORNEY GENERAL

March 4, 2025

*Via electronic mail*
Mr. Glenn Nelson
glenn.nelson333@yahoo.com

*Via electronic mail*
Ms. Carmen Rodriguez
FOIA Officer
City of Chicago
Department of Procurement Services
121 North LaSalle Street, Room 806
Chicago, Illinois 60602
dpsfoia@cityofchicago.org

RE: FOIA Request for Review – 2024 PAC 83929

Dear Mr. Nelson and Ms. Rodriguez:

This determination is issued pursuant to section 9.5(f) of the Freedom of Information Act (FOIA) (5 ILCS 140/9.5(f) (West 2023 Supp.)). For the reasons that follow, the Public Access Bureau is unable to conclude that the City of Chicago (City) Department of Procurement Services (DPS) improperly withheld records responsive to Mr. Glenn Nelson's October 22, 2024, FOIA request.

On that date, Mr. Nelson submitted a four-part FOIA request to DPS seeking, relevant to this Request for Review, a copy of the operations manuals for the City's automated red-light camera enforcement program and automated speed camera enforcement program, both including radar. On November 6, 2024, DPS responded to that part of the request by stating that it did not possess the requested operations manuals and noted that FOIA requests must be directed to the City department that maintains the records, citing *Duncan Publishing, Inc. v. City of Chicago*, 304 Ill. App. 3d 778, 784 (1999).

On November 7, 2024, Mr. Nelson forwarded a copy of DPS's response to his request to two Assistant Attorneys General (AAsG) in the Public Access Bureau and asked this office to advise who he could contact for the requested operations manuals. Mr. Nelson stated that four other City departments, including the City's Department of Transportation (CDOT), had asserted that they did not maintain the manuals he was seeking. In his previous Request for Review of CDOT's denial of his request for a copy of the speed camera operations manual, this office determined that CDOT provided an adequate explanation for why it did not possess that manual and therefore Mr. Nelson's allegation that CDOT failed to disclose that manual was unfounded.[1]

On November 15, 2024, an AAG responded to inform him that this office does not possess a list of records maintained by public bodies and asked if he wished for this office to review DPS's partial denial of his FOIA request through a Request for Review; that evening, Mr. Nelson confirmed so, stating that he believed DPS would be the department that maintains the operations manuals.

On November 22, 2024, this office forwarded a copy of the Request for Review to DPS and asked that it provide a detailed description of the search for the responsive operations manuals, including the recordkeeping systems that were searched, how they were searched, and the specific DPS personnel who were consulted. On December 4, 2024, in e-mail correspondence on which Mr. Nelson was copied, DPS provided its response. That evening, Mr. Nelson replied in an e-mail indicating that he believed that response was composed by the AAG assigned to this matter. On December 5, 2024, the AAG clarified that the response was from DPS and notified Mr. Nelson of his right to reply to that response; he did so that day. Mr. Nelson has since inquired with the AAG about the status of the determination several times.

**DETERMINATION**

All public records in the possession or custody of a public body are "presumed to be open to inspection or copying." 5 ILCS 140/1.2 (West 2022); *see also Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 415 (2006). A public body "has the burden of proving by clear and convincing evidence" that a record is exempt from disclosure. 5 ILCS 140/1.2 (West 2022).

FOIA is intended to ensure public access to "full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees[.]" 5 ILCS 140/1 (West 2022). However, "[a] requester is entitled only to records that an agency has in fact chosen to create and retain." *Yeager v. Drug Enforcement Administration*, 678 F. 2d 315, 321 (D.C. Cir. 1982). FOIA generally requires a public body to conduct a reasonable search for responsive records under the circumstances of

[1]Ill. Att'y Gen. PAC Req. Rev. Ltr. 82596, issued September 23, 2024, at 2.

Exhibit B (page 3 of 4)



each request. *Better Government Ass'n v. City of Chicago*, 2020 IL App (1st) 190038, ¶ 31. Further, a FOIA request must generally be directed to the government entity responsible for maintaining the types of records requested. *See Duncan Publishing, Inc.*, 304 Ill. App. 3d at 785 ("[T]he individual departments, which are City funded and City controlled, are 'public bodies' and are each individually subject to the mandates of the FOIA.").

In its response to this office, DPS provided an explanation of its search for all of the records requested by Mr. Nelson in his FOIA request, not just the contested records at issue in this Request for Review, which are the operations manuals. Regarding the search for the operations manuals, DPS's FOIA Officer, Carmen Rodriguez, explained:

> I sent Mr. Nelson's request to subject matter experts at DPS: John O'Brien, Deputy Procurement Officer; Michael Richy, Assistant Procurement Officer; and Joseph Chan, Senior Procurement Specialist. Both Mr. O'Brien and Mr. Chan responded. Mr. Chan stated that DPS would not have the functional specs and that we should refer the request to the Department of Transportation (CDOT). Mr. O'Brien also concluded that that [*sic*] DPS would have to refer the requestor to CDOT for operations manuals and functional specs. This aligns with my experience as a DPS FOIA Officer and employee that the departments DPS purchases on behalf of—here, CDOT—are generally the holders of technical and user records.[2]

Ms. Rodriguez also explained: "DPS is the contracting authority for the City of Chicago and procures goods and services on behalf of the City's various departments. However, DPS is not the custodian of operational records used by the client departments, including manuals and technical specifications."[3]

In his December 4, 2024, reply, Mr. Nelson did not dispute the adequacy of DPS's search, but rather reiterated that CDOT had already confirmed that it did not possess the operations manuals and asked this office for assistance on how to secure the requested information. In his December 5, 2024, reply, Mr. Nelson stated that "[s]o far, five departments have claimed they do not have it and none have given correct guidance on what department to

---

[2]Letter from Carmen Rodriguez, FOIA Officer, Department of Procurement Services, City of Chicago, to Katie Goldsmith, Assistant Attorney General, Public Access Bureau, Illinois Attorney General's Office (December 4, 2024), at 2.

[3]Letter from Carmen Rodriguez, FOIA Officer, Department of Procurement Services, City of Chicago, to Katie Goldsmith, Assistant Attorney General, Public Access Bureau, Illinois Attorney General's Office (December 4, 2024), at 2.

Exhibit B (page 4 of 4)



contact to get it."[4] Mr. Nelson again asked this office how he could find out where to obtain the requested operations manuals via FOIA.

Based on all the available information, this office concludes that DPS took appropriate measures to comply with Mr. Nelson's FOIA request. The DPS FOIA Officer consulted with pertinent procurement personnel who would have first-hand knowledge of the records DPS possesses. These staff members confirmed that DPS does not possess the operations manuals because DPS does not possess operations records for City departments. Mr. Nelson has not provided any information suggesting that DPS does possess these manuals, only that other City departments had informed him they are not in possession of the operations manuals. Because DPS's explanation of why it does not possess the requested operations manuals is sufficient to demonstrate that further search efforts would be futile, this office concludes that DPS's response did not violate FOIA.

Additionally, in a telephone conversation yesterday, Ms. Rodriguez advised the AAG that she was aware that the City's Department of Finance (DOF) received a request from Mr. Nelson for the same operations manuals he requested from DPS and that DOF advised it was in possession of the operations manuals. This morning, Ms. Rodriguez forwarded DOF's response to Mr. Nelson's request for the operations manuals to the AAG. DOF denied the request pursuant to sections 7(1)(g) and 7(1)(o) of FOIA.[5] DOF's confirmation that it is the public body that possesses the manuals further supports the conclusion that DPS's response to Mr. Nelson's request did not violate FOIA.

The Public Access Counselor has determined that resolution of this matter does not require the issuance of a binding opinion. This file is closed. If you have any questions, you may contact me at katherine.goldsmith@ilag.gov.

Very truly yours,

Katie Goldsmith

KATIE GOLDSMITH
Assistant Attorney General
Public Access Bureau

83929 f 3a search proper mun

---

[4]E-mail from Glenn Nelson to [Katie Goldsmith] (December 4, 2024).

[5]5 ILCS 140/7(1)(g), (1)(o) (West 2023 Supp.), as amended by Public Acts 103-605, effective July 1, 2024; 103-865, effective January 1, 2025.